**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

GARY DeMASTRY,                                   CASE NO. 2:05-cv-267
                                                 JUDGE FROST
                    Petitioner,                  MAGISTRATE JUDGE ABEL

v.


WARDEN, HOCKING CORRECTIONAL
FACILITY,
             Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to

28 U.S.C. §2254.  On July 20, 2005, the Court granted petitioner's request for a stay of proceedings

pending exhaustion of state court remedies.  Doc. No. 15.  On March 20, 2006, petitioner filed a

notice of exhaustion of state court remedies.  Doc. No. 25.  This matter is now before the Court on

the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.


## SUMMARY

Petitioner DeMastry is the former Sheriff of Fairfield, County, Ohio.  This action involves his

convictions after a jury trial and subsequent guilty plea on various charges of theft in office, money

laundering, and tampering with evidence.   He was sentenced to an aggregate term of six years

incarceration.   Petitioner's jury trial convictions were affirmed by the state appellate and Ohio

Supreme Court.  He filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B),

in which he raised the ineffective assistance of appellate counsel, which likewise was denied by the

state courts. DeMastry also filed a motion for specific performance of his guilty plea agreement, in which he alleged that the prosecutor had breached the terms of the plea agreement by filing a subsequent civil action against him. That motion was also denied by the state trial court. The state appellate court affirmed the trial court's decision dismissing petitioner's motion for specific performance, and his subsequent appeal was dismissed by the Ohio Supreme Court. Finally, DeMastry filed a post conviction action in which he asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). The state courts denied him relief in the postconviction action.

In these habeas corpus proceedings, petitioner Gary DeMastry asserts that he was:

- subjected to Double Jeopardy Clause,
- denied a fair trial due to various state court evidentiary rulings and undue publicity regarding his case,
- denied his right to confront witnesses and to present a defense,
- denied the effective assistance of appellate counsel, and
- sentenced in violation of *Blakely*.

For the reasons that follow, the Magistrate Judge concludes that all of the foregoing claims are either without merit or were not properly preserved for federal habeas corpus review. The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED.**

## I. FACTS and PROCEDURAL HISTORY

Ohio's Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant is the former Sheriff of Fairfield County, Ohio, elected by popular vote in 1992 and reelected in 1996. In January 2000, appellant was indicted on over 300 counts related to his service as an elected official, including theft in office, money laundering, and tampering with evidence. Many of the counts pertained to appellant's activities surrounding a state audit of the sheriff department's Furtherance-of-Justice fund ("FOJ"), including allegations that appellant directed certain subordinates and other individuals to sign or prepare false

2

affidavit forms and expenditure documents. Additional charges were filed in May 2000 and December 2000. Three hundred twenty-three counts were ultimately consolidated under one case number. Appellant pled not guilty to all charges. However, prior to the start of the trial in March 2001, the trial court severed 273 of the 323 counts, deferring them until a later time. The remaining 50 counts were presented to the jury in the present case. On December 11, 2001, the jury returned a verdict of guilty on 32 counts and not guilty on one count. It was a hung jury on the remaining 17.

On January 18, 2002, the trial court issued its judgment of sentence. The court determined that none of the felonies should merge for sentencing purposes. The felony sentences were as follows. Appellant received a sentence of six years in prison for one count of engaging in a pattern of corrupt activity ("EPCA"), a felony of the first degree. Appellant also received a sentence of five years for one count of conspiracy to engage in a pattern of corrupt activity. Appellant was sentenced to four years each on 22 counts of evidence tampering or complicity in evidence tampering, felonies of the third degree. Appellant was further sentenced to 12 months each on four counts of theft in office or complicity to commit theft in office, (some of which were subject to the pre-July 1, 1996 Revised Code provisions). Finally, appellant was sentenced to nine months for obstructing justice, a felony of the fifth degree.

In regard to the misdemeanor convictions, appellant received the following sentences. On two counts of soliciting or receiving improper compensation, misdemeanors of the first degree, appellant was sentenced to six months on each. Also, on one count of filing a false financial-disclosure statement, a misdemeanor of the first degree, appellant was given a six-month sentence.

All of the aforesaid felony and misdemeanor sentences were ordered to be served concurrently.

*State v. DeMastry*, 155 Ohio App.3d 110 (Ohio App. 5 Dist. 2003), Exhibit G to Return of Writ.

On October 31, 2002, in the Portage County Court of Common Pleas,[1] petitioner DeMastry pleaded

---

[1] According to petitioner, venue was transferred to Portage County due to publicity regarding the trial verdict. *Petition*, at 11.

3

guilty to complicity to money laundering, two counts of tampering with evidence, complicity to commit tampering with evidence, and theft in office.  Exhibit C to Return of Writ.  In accordance with the terms of a plea agreement, the remainder of the 268 charges against him were dismissed.  *See Return of Writ*, at 3 n.1.  DeMastry was sentenced to an aggregate of three years incarceration, such sentence to be served concurrently to the prior sentences imposed.  Exhibit D to Return of Writ.  Petitioner did not appeal the convictions or the sentences that resulted from his guilty plea;[2] however, represented by new counsel petitioner did appeal his jury trial convictions.  He asserted the following assignments of error on appeal:

> I. The appellant, as a first-time offender was denied the proper consideration of the minimum sentence, under R.C. 2929.11(A), when the court failed to demonstrate that it engaged in the required analysis, prior to mouthing the *de minimis* statutory language, in the negative, into the transcript.

> II. The defendant-appellant was denied due process and a fair trial under section 10, Article I, Ohio Constitution and under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court imposed cumulative punishments for the same offense in violation of R.C. 2941.25(A).

> III. The trial court abused its discretion by failing to adhere to the statutory provision of Ohio R.C. 2929.11(B), which requires a sentencing court to impose a sentence, that is consistent with sentences imposed for similar crimes committed by similar offenders.

> IV. The trial court erred in refusing to give separate instructions for each section of the complicity to tampering with evidence statute even though the Demastry [sic] was indicted on more than one section

---

[2]  Approximately two years later, however, on November 30, 2004, petitioner filed a motion for specific performance of his guilty plea agreement, arguing that asserted that a civil lawsuit filed against him must be dismissed as in violation of the terms of his guilty plea. *See discussion, infra.*

making the jury instruction overbroad.

V. The trial court erred in refusing to give separate instructions for each section of the tampering with evidence statute when the bill of particulars was specific as to the conduct of the defendant/appellate [sic] even though the Demastry [sic] was indicted on more than one section.

VI. Appellant's count 50 conviction for engaging in a pattern of corrupt activity and count 31 conviction for conspiring to engage in a pattern of corrupt activity must be overturned as a matter of law because predicate offenses must be overturned, there was improper 404(B) evidence permitted and the juror [sic] could have base [sic] their verdict on acquitted or hung counts.

VII. The court erred in presenting the jury with misleading and confusing instructions and verdict forms, unreasonably denying requests to list the charges separately.

VIII. The multiple erroneous evidentiary rulings by the trial judge, when combined with his infinite number of errors in instructing the jury, amounted to plain and prejudicial error.

IX. Over the objection of the defense, the state was permitted to use other acts evidence to prove the case against appellant. The trial court had severed another case for trial, as it had nothing to do with the charges that were to be tried in the fifty counts the state had been allowed to select, unilaterally for trial. The state was allowed to use the allegations, in the second case, in their case in chief herein.

X. The trial court erred in arbitrarily selecting fifty counts of a 328-count indictment against one defendant and delegating the authority of severance to the state of Ohio.

XI. The trial court's jury *voir dire* was inadequate to ensure that the jury impaneled was fair and impartial.

Exhibit G to Return of Writ. On October 17, 2003, the appellate court affirmed the judgment of the

trial court. Exhibit G to Return of Writ. Represented again by his former trial attorney, petitioner

5

filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following propositions of law:

> 1.  A trial court commits prejudicial error in no providing a jury with separate verdict forms for each count alleged in the indictment.  The failure to provide separate verdict forms deprives a defendant of his state and federal constitutional rights to an impartial and unanimous jury and his right to have his guilty properly proven beyond a reasonable doubt.

> 2.  A defendant is deprived os his state and federal constitutional right to due process, protection against double jeopardy and the Article I, Section 10 right to indictment by a grand jury, when the trial court improperly broadens an indictment by allowing all sections of the complicity to tampering with evidence charges to go to the jury despite the fact that appellant was not indicted under all sections of the applicable statutes.

> 3.   When a defendant is indicted on three hundred twenty-three counts, the prosecution must either try him on all counts in one trial or dismiss any counts which will not be tried in one trial.  There is no precedent for a trial court arbitrarily bifurcating trials into blocks of fifty counts at a time.

> 4.  A defendant is deprived of his right to due process and a fair trial under the Ohio and United States Constitutions when the prosecution was permitted to introduce charges that were severed from the first trial and counts the prosecution elected not to proceed with during the first trial.

> 5.   Media coverage of the special audit and charges against Sheriff DeMastry so permeated the Fairfield County region that the trial court's failure to change venue denied DeMastry his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and an impartial jury.

> 6.  A trial court commits prejudicial error in not imposing a minimum sentence on a first offender, likening the offense of racketeering to rape, permitting sentencing on allied offenses, and not imposing a similar sentence for similar offenses.

6

Exhibit H to Return of Writ.  On March 24, 2004, the Ohio Supreme Court declined jurisdiction to

hear the case and dismissed the appeal as not involving any substantial constitutional question.

Exhibit J to Return of Writ.

Still represented by counsel, on January 15, 2004, petitioner filed an application to reopen the

appeal pursuant to Ohio Appellate Rule 26(B).  He asserted the following claims:

> 1.  DeMastry was deprived of his state and federal constitutional
> rights to the effective assistance of appellate counsel when counsel
> failed to assign as error the trial court's admission of a co-defendant's
> verbal act as substantive evidence of guilt in violation of the right to
> confrontation made applicable to the states by the Fourteenth
> Amendment of the Federal Constitution and Article One Section Ten
> of the Ohio Constitution.

> 2.  DeMastry was deprived of his state and federal constitutional
> rights to the effective assistance of appellate counsel when counsel
> failed to assign as error the trial court's erroneous restriction of
> appellant's right to confront and cross examine state's witness John
> Clark.

Exhibit K to Return of Writ.  On June 28, 2004, the appellate court denied the application.  Exhibit

L to Return of Writ.  DeMastry filed a timely appeal to the Ohio Supreme Court, in which he asserted

these same claims.  Exhibit M to Return of Writ.  On October 27, 2004, the Ohio Supreme Court

dismissed the appeal as not involving any substantial constitutional question.  Exhibit N to Return of

Writ.

On November 30, 2004, petitioner filed a motion for specific performance of his guilty plea

agreement.  Petitioner asserted that under the terms of his guilty plea the civil claims against him had

to be dismissed.  Exhibit O to Return of Writ.  On January 28, 2005, the trial court denied petitioner's

motion.  Exhibit P to Return of Writ.  Petitioner filed a timely appeal of the trial court's decision to

the state appellate court. He raised the following claim:

> Appellant's plea was not knowingly, voluntarily and intelligently made and he was deprived of due process of law when the state agreed not to seek any further criminal or civil penalties if he pled guilty to several counts prior to his second trial but the state failed to live up to its end of the bargain when it filed a civil suit against appellant and the trial court erred in refusing to order specific performance of the plea agreement against the state.

*See* Exhibit U to Return of Writ. On September 23, 2005, the state appellate court affirmed the trial court's dismissal of petitioner's motion for specific performance of his plea agreement. *Id.* The Ohio Supreme Court dismissed petitioner's subsequent appeal. Exhibit V to Return of Writ. On December 13, 2004, petitioner filed a petition for post conviction relief with the state trial court in which he asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Exhibit Q to Return of Writ. On January 18, 2005, the trial court denied petitioner's post conviction petition. Exhibit R to Return of Writ. Petitioner filed a timely appeal, which was denied on September 15, 2005. Exhibit S to Return of Writ. On February 8, 2006, the Ohio Supreme Court dismissed petitioner's subsequent appeal. Exhibit T to Return of Writ.

On March 23, 2005, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.[3] He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner was deprived of his federal constitutional right to due process and a fair trial, protection against double jeopardy and the right to indictment by a grand jury, when the trial court improperly broadened the indictment by allowing all sections of the complicity to

_____

[3] At petitioner's request, proceedings were stayed from July 20, 2005, to May 24, 2006, pending his exhaustion of state court remedies.

tampering with evidence charges to go to the jury despite the fact that petitioner was not indicted under all sections of the applicable statutes.

2.  Petitioner was deprived of his right to due process and a fair trial and his right to present a defense when the trial court *sua sponte* ordered the prosecution to bifurate trials on a three hundred twenty-three count indictment to separate trials of fifty counts each thus compromising defendant's defense and violating his right to be tried on all counts in the indictment unless dismissed before trial by the prosecution.

3.  A defendant is deprived of his right to due process and a fair trial under the Ohio and United States Constitutions when the prosecution was permitted to introduce charges that were severed from the first trial, that the prosecution elected not to proceed with, and that did not constitute 404(B) evidence.

4.  Media coverage of the special audit and charges against petitioner, the former sheriff, so permeated the Fairfield County region that the trial court's failure to change venue denied DeMastry his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and an impartial jury.

5.  The trial court committed prejudicial error in not imposing a minimum sentence on a first offender, contrary to *Blakely v. Washington* (2004), 124 S.Ct. 2531, *United States v. Booker* and *United States v. Fanfan*, [125 S.Ct. 738 (2005)] . . . likening the offense of racketeering to rape, permitting sentencing on allied offenses and not imposing a similar sentence for similar offenses.  The sentencing violations in this case violate a defendant's due process and double jeopardy rights under the Federal Constitution.

6.  The trial court committed prejudicial error in not providing the jury with separate verdict forms for each count alleged in the indictment. The failure to provide separate verdict forms deprived petitioner of his federal constitutional right to an impartial and unanimous jury and his right to have his guilt properly proven beyond a reasonable doubt.

7.  Petitioner was deprived of the effective assistance of appellate counsel pursuant to the United States Constitution when counsel

failed to assign as error the trial court's admission of a co-defendant's verbal act as substantive evidence of guilt in violation of the right to confrontation pursuant to the United States Constitution.

8.  Petitioner was deprived of his federal constitutional right to the effective assistance of appellate counsel when counsel failed to assign as error the trial court's erroneous restriction of petitioner's right to confront and cross examine state's witness John Clark.

9.  Petitioner's plea was not knowing, voluntary and intelligently made and he was deprived of due process of law when the state agreed not to seek any further criminal or civil penalties if he pled guilty to several counts prior to his second trial but the state failed to live up to its end of the bargain when it filed a civil suit against DeMastry and the trial court erred in refusing to order specific performance of the plea agreement against the state.

It is the position of the respondent that all of petitioner's claims are without merit.

### III.  CLAIM ONE

In claim one, petitioner DeMastry asserts that he was denied due process, the right to indictment by a grand jury, and protection against double jeopardy because the trial court improperly allowed

all sections of the complicity to tampering with evidence charges to go to the jury despite the fact that petitioner was not indicted under all sections of the applicable statutes.

*Petition*.  The state appellate court rejected this claim as follows:

[A]ppellant contends that the trial court erred in instructing the jury concerning the counts of complicity in tampering with evidence. We disagree.

Ohio's complicity statute, R.C. 2923.03, reads in pertinent part as follows:

10

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense."

In the present case, the relevant complicity-in-tampering-with-evidence counts were indicted as follows: Several counts in the range between G-9 through G-30 were under R.C. 2923.03(A)(1); Count G-1 was under R.C. 2923.03(A)(2); Counts G-40 through G-42 were under R.C. 2923.03(A)(4). The trial court chose to read a general instruction as to complicity in tampering with evidence, then gave examples of conduct that would not rise to the level of complicity. The trial court thereafter referred the jury to the verdict forms, each paragraph of which described each charge in detail and delineated the conduct that constituted the separate offense with which appellant was charged. The court told the jury to refer to these verdict forms and instructed that the jury must be unanimous in its finding on each fact supporting each offense in order to convict.

Appellant in essence contends that the aforesaid method of jury instruction permitted the jury to consider all the statutory possibilities for each count of complicity when only one subsection of R.C. 2923.03(A) had been alleged as to each count. Appellant's trial counsel entered the following objection prior to the retirement of the jury:

"Well, I guess-okay. I understand what the Court's ruling is. But it comes to a particular problem with the complicity to tampering when we're talking about different code sections depending on the counts. "So this jury has in front of it a general instruction that allows them to find Gary DeMastry guilty of complicity to tampering if any one of the (A) through (C) is proved. However, according to the indictment, only, for example, in count G-1 would the (A) section apply, and only, for example, in G-22 through 25 would the (C) apply. But the way these instructions are worded, they could find any of those in any of the code sections."

11

Jury instructions are within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Musgrave* (April 24, 2000), Knox App. No. 98CA10, 2000 WL 502688, citing *State v. Martens* (1993), 90 Ohio App.3d 338, 629 N.E.2d 462. Jury instructions must be reviewed as a whole. *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792. A jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 405 N.E.2d 247. In this case, while the jury's task was arguably complicated by the number of counts, each complicity-in-tampering count itself was indeed clearly spelled out in the verdict form, describing the particular conduct at issue. Furthermore, we find unpersuasive appellant's suggestion that the trial court's method of jury instruction caused him to be tried on charges not presented in the indictment. *Cf. Stirone v. United States* (1960), 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

We therefore conclude that the trial court did not abuse its discretion in instructing the jury as to the counts of complicity in tampering with evidence. appellant's fourth assignment of error is overruled.

Exhibit G to Return of Writ.

The decision of the state appellate court is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

12

evidence.

28 U.S.C. §2254(d), (e).

> A state court's determination is contrary to federal law when the state
> court arrives at a conclusion opposite to that reached by the Supreme
> Court on a question of law or on indistinguishable facts. *Williams v.
> Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000). A state court's decision is an unreasonable application of
> federal law when the state court correctly identified the applicable
> legal principle from Supreme Court precedent, but applied that
> principle to the facts before it in an unreasonable manner. *Id.* at 413,
> 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard

here.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they

deprive petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see*

*also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69

(6th Cir. 1983). A habeas petitioner challenging jury instructions must establish that "the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process."

*Cupp v. Naughten*, 414 U.S. 141, 147 (1973). An omission or an incomplete instruction is less likely

to be prejudicial than a misstatement of law. *Henderson*, 431 U.S. at 155.

The record indicates that the trial court instructed the jury in relevant part as follows:

> The State asserts 50 counts against Gary DeMastry: Eleven counts of
> theft in office; two counts of complicity to theft in office; five counts
> of money laundering; two counts of soliciting or receiving improper
> compensation; six counts of tampering with evidence; twenty counts
> of complicity to tampering with evidence; one count of filing a false
> financial disclosure statement; one count of obstructing justice; one

13

count of engaging in a pattern of corrupt activity; one count of conspiracy to engage in a pattern of corrupt activity.

These instructions define each of those alleged offenses, the meaning of other important terms, and procedures you should use in your deliberations.  The chart at the end of these instructions summarizes those charges.  And that is the same chart that you have had with you during the course of the trial.

*Transcript*, at 2937.

In counts G-1, G-9 through G-12, G-14 through 17, G-22 through 25, G-27 through 30, and G-40 through 42, the State charges Gary DeMastry with complicity to tampering with evidence.

A person commits the offense of complicity to tampering with evidence when the person knowingly and purposely (a) solicits or procures another to commit that offense; or (b) aids or abets another in committing that offense; or (c) causes an innocent person to commit that offense.

To prove a Defendant's complicity to tampering with evidence by aiding and abetting an offender, the State must show (a) that the Defendant supported, assisted, encouraged, cooperated with, advised or incited the offender in committing that offense; and (b) that the Defendant shared the offender's intent to commit that offense.  You may infer the Defendant's intent from the circumstances surrounding the offense, including the Defendant's presence, companionship, and conduct before and after the offense is committed.  A person can be guilty of complicity to – excuse me – tampering with evidence – that will be corrected when you receive them in writing – even if the person with whom that person acted in complicity has not been convicted of that offense.

Mere presence of the defendant or the fact that the Defendant was acquainted with a person alleged to have committed tampering with evidence is not sufficient to support a finding of guilt of complicity.  One does not aid and abet if he merely knows or even observes a crime being committed.  Mere approval or acquiescence without the

expressed concurrence or the doing of something to contribute to an unlawful law is not an aiding or abetting of the act.

*Id.*, at 2952-2954.

Applying the definitions of the offenses charged, you will consider each count separately. Before you can find Gary DeMastry guilty of any charge, you must find that the State proved beyond a reasonable doubt that on or about the dates listed in the summary of counts and described in the verdict form, in Fairfield County, Ohio, each element of that offense according to the specific instructions for that offense.

If you find that the State proved beyond a reasonable doubt all the essential elements of any one or more of the offenses charged in the separate counts, your verdict must be guilty as to such offense or offenses according to your findings.

If you find that the State failed to prove beyond a reasonable doubt any one or more of the essential elements of any one or more of the offenses charged in the separate counts, your verdict must be not guilty as to such offense or offenses according to your findings.

The charge set forth in each count constitutes a separate and distinct offense. You must consider each count and the evidence applicable to each count separately and you must reach your verdict as to each count separately, uninfluenced by your verdict as to any other count. You may find the Defendant guilty or not guilty of any one or all of the offenses charged.

You will have one verdict form with a separate paragraph for each count. You will complete a verdict form paragraph by placing the word "guilty" or the term "not guilty" in the blank space provided for that count. If you cannot agree unanimously about any finding, you should not insert anything in a blank space....

This is the verdict form. I'm going to read part of it to you now so that you have some idea how it looks. And again, you will have it

15

with you in the jury room and you will use it for deciding anything you can agree upon unanimously. You must make all findings unanimously. You cannot make any finding with less than a unanimous verdict. Whether it is guilty, not guilty, you cannot make any finding unless it is unanimous.

I'll read the first part of the verdict form.

We, the jury, make the following unanimous findings on the charges against Defendant Gary DeMastry:

Numbered paragraph one: We find Defendant Gary DeMastry – blank. And there's a blank space, after which it says, insert "guilty" or "not guilty," of complicity with Penny DeMastry in tampering with evidence on or about March 10, 1997 and May 27, 1998, by submitting to the State Auditor's office false Furtherance of Justice account records for the months of November and December 1994, as charged in count G-1.

So, you see, this helps you to orient both the nature of the charge and the identity of the offense. And you should, of course, look back to the definitions of that offense in the instructions that you have in writing to satisfy yourselves one way or the other, if you can, as to whether the Defendant should be found guilty or not guilty by a unanimous determination.

*Id.*, at 2959-2962. The trial court then went through several more of the charges as identified by the verdict forms, and stated:

Now, I'm not going to go through all of these, but they are similarly structured.

\*\*\*

So what you're doing in each instance is filling in the blanks to complete the sentence, but only if you reach a unanimous verdict as to how to fill in those blanks. If you don't agree unanimously as to

16

any blank, you can't fill it in.

*Id.*, at 2963-2964. Additionally, the trial court further instructed the jury:

> In a criminal case, all 12 jurors must agree upon and sign a verdict for
> any count in order for it to have legal validity. Whenever all 12 jurors
> agree upon a verdict for any count, you will complete that numbered
> paragraph. After you have completed the verdict form for all counts
> for which you agree unanimously, all the jurors should sign in ink the
> verdict form that contains your unanimous findings.

*Id.*, at 2966-2967.

Petitioner argues that these instructions broadened "the indictment to allow multiple
convictions for conduct that was not indicted by the grand jury." *Traverse*, at 11. Petitioner states:

> [C]ontrary to the Court of Appeals' opinion, the verdict form(s) did
> not clarify the issue because it did not cite the specific portions of the
> statute relating to each charge. In addition, the verdict form(s) [are]
> irrelevant in determining whether error occurred because the jury
> instructions... clearly permitted the jury to find guilty based on any one
> of the four sections of complicity.

*Id.*

Disposition. The trial court told the jury to refer to the verdict form on each particular count
against petitioner to determine whether or not he was guilty of each of the charges against him.
Unfortunately, the verdict forms have not been made a part of the record before this Court; however,
the state appellate court stated that

> each complicity-in-tampering count itself was indeed clearly spelled
> out in the verdict form, describing the particular conduct at issue.

Exhibit G to Return of Writ. Petitioner has offered nothing to rebut the factual finding of the state

17

appellate court. *See* 28 U.S.C. §2254(e)(1). Therefore, his argument that he could have been convicted under any section of Ohio's complicity statute as to each of the complicity charges against him fails, as does his argument that the jury instructions violated the Double Jeopardy Clause, his right to due process and his right to indictment by a grand jury.

Claim one is without merit.

### III.  FAIR PRESENTMENT:  CLAIMS  TWO AND SIX

In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v.Harless,* 459 U.S. 4, 6 (1982).  "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir. 1986).  Petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears self evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless*, 459 U.S. at 6).  Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns."  *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993)(citing *Franklin v. Rose*, 811 F.2s 322, 326 (6th Cir. 1987)).  Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984).  Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir.

1960)).  The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review.  *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).

## A.  CLAIM TWO

In claim two, petitioner asserts that he was denied due process and the right to present a defense when the trial court *sua sponte* bifurcated the three hundred twenty-three count indictment against him into separate trials of fifty counts each.  It is the position of the respondent that petitioner waived his right to present such claim in federal habeas corpus review by failing fairly to present the claim to the state courts as a federal constitutional issue.

On direct appeal, petitioner asserted:

> The trial court erred in arbitrarily selecting fifty counts of a 328 count indictment against one defendant and delegating the authority of severance to the State of Ohio.

Exhibit E to Return of Writ.  He argued generally that the trial court's severance of the charges against him into fifty counts per trial was unfair and prejudicial, and that joinder of trials typically was favored.  He cited *Malloy v. Hogan*, 378 U.S. 1 (1964), a United States Supreme Court case which dealt with the privilege against self incrimination, for the general proposition that "a violation of a state constitutional right is a violation of the Fifth Amendment to the United States Constitution." *Exhibit E*, at 39.  He also briefly referred to *United States v. Cope*, 312 F.3d 757 (6th Cir. 2002), wherein the United States Court of Appeals for the Sixth Circuit rejected the argument that a District Court's denial of the defendant's motion to sever charges for trial constituted reversible error, stating that "a jury is presumed capable of considering each count separately...  and any prejudice may be

19

cured by limiting instructions." *Id.*, at 781 (citations omitted). However, petitioner never raised in the state courts any claim that he had been denied his constitutional right to present a defense, nor did he did refer to any federal cases standing for the proposition that a defendant may be denied his federal constitutional right to a fair trial when the trial court orders a severance of charges for trial. Although petitioner did allude to a possible violation of the Double Jeopardy Clause in his state appellate brief, he has not presented any double jeopardy claim for federal habeas corpus review.

The state appellate court likewise reviewed petitioner's claim for the alleged violation of state law only:

> [A]ppellant argues that the trial court erred in ordering severance of the 50 counts tried in this case from the original 323-count indictment. We disagree.
>
> Crim.R. 14 reads as follows:
>
> "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
>
> Our research indicates that there is abundant case law addressing a defendant's seeking severance of offenses. The general rule is that the defendant bears the burden under Crim.R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. *State v. Coley* (2001), 93 Ohio St.3d 253, 259, 754 N.E.2d 1129, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus. Here, however, appellant takes the far less common approach of arguing *against* the propriety of severance. Nonetheless, we maintain that the burden of showing prejudice still falls on appellant in such circumstances, as he filed the motion objecting to the trial court's pretrial decision to sever the first 50 counts. *See State v. Cartellone* (1981), 3 Ohio App.3d 145, 151, 3 OBR 163, 444 N.E.2d 68, quoting *State v. Perod* (1968), 15 Ohio App.2d 115, 120, 44

O.O.2d 249, 239 N.E.2d 100: " 'Absent some abuse of discretion, to be demonstrated by a clear showing of prejudice and the consequent denial of a fair trial, the [severance] determination is not subject to reversal.' "

A trial court is vested with discretion to control judicial proceedings. *In re Guardianship of Maurer* (1995), 108 Ohio App.3d 354, 670 N.E.2d 1030. Appellant, at other points in his brief, posits that this case was of an "extraordinarily complex nature." We thus find no demonstration of prejudice against appellant by the trial court's decision to limit the state to prosecuting 50 counts in the present case. We additionally find unripe appellant's suggestion that double jeopardy was violated by the severance.

Accordingly, appellant's tenth assignment of error is overruled.

Exhibit G to Return of Writ.

<u>Disposition</u>.  Petitioner has failed to fairly present any federal constitutional issue regarding the denial of his right to present a defense to the state courts.  Additionally, he has not demonstrated cause for that failure.  He therefore has waived his right to present this claim for federal habeas corpus relief.

Further, even assuming that petitioner fairly presented to the state courts a claim that he was denied due process by the trial court's severance of charges against him, this claim is, in any event, without merit.  Federal habeas review of state court evidentiary rulings is extremely limited.  *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990).  Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983).  Such are not the circumstances here.

Where a defendant alleges that a denial of due process due to the trial court's refusal to grant

21

a severance of charges against him, he

> must show that the misjoinder rendered the trial fundamentally unfair. *Hollands v. Department of Corrections,* 969 F.2d 606 (8 Cir.1992); *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) as cited in *United States v. Chavis,* 296 F.3d 450 (6 Cir.2002). Thus, misjoinder reaches constitutional dimensions only if it makes a state trial unfairly violative of due process. *Herring v. Meachum,* 11 F.3d 374 (2d Cir.1993).

> A claimant must show more than the potential for prejudice; he must prove that actual prejudice occurred at trial. *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Thus, Petitioner has no relief under 28 U.S.C. § 2254 unless the consolidation actually rendered the Petitioner's state trial fundamentally unfair and violative of due process. *Tribbitt v. Wainwright,* 540 F.2d 840 (5 Cir.1976), *cert. denied ,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977); *Lucero v. Kerby,* 133 F.3d 1299 (10 Cir.1998); *Robinson v. Wyrick,* 738 F.2d 1091 (8 Cir.1984) . The granting or denying of severance is within the trial judge's discretion. *Glinsey v. Parker,* 491 F.2d 337 (6 Cir.1974).

*Dowell v. Eckman*, unpublished, 2006 WL 228933 (W.D. Ky. January 25, 2006).  Similarly, here, petitioner simply has failed to establish that the trial court's ruling constituted an error of constitutional dimension.  Petitioner argues that he was prejudiced by the trial court's ruling because he intended to show that many of the 273 deferred counts were "biased, improper and politically motivated," and because severance exposed him to inconsistent results.  *Traverse,* at 15.  Petitioner's argument is not persuasive.  Nothing prevented petitioner from raising these issues at trial.

Claim two is waived or without merit.

## B.  CLAIM SIX

In claim six, petitioner asserts that he was denied the right to an impartial and unanimous jury and the right to have his guilt proven beyond a reasonable doubt because the trial court failed to

provide the jury with separate verdict forms for each of the charges alleged.  Again, however, petitioner failed to present this claim in federal constitutional terms to the state appellate court. Instead, he argued that the jury instructions and verdict forms taken as a whole were "misleading and confusing," and that the trial court should have provided separate verdict forms as to each count in view of the complexity of the case.  *See* Exhibit E to Return of Writ.  Petitioner further argued that the jury instructions and verdict forms were so confusing as to amount to "an abuse of discretion" on the part of the trial court.  *See id.*  However, petitioner did not refer to the United States Constitution, nor any federal or state cases that relied upon federal constitutional law in support of his claim.

The state appellate court reviewed his claim for a violation of state law only:

> [A]ppellant argues that the jury instructions and verdict forms, taken as a whole, are misleading and confusing to the extent that all of his convictions must be reversed. We disagree.
>
> When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Crim.R. 31(A) reads as follows: "The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court."
>
> The trial judge in this case chose to place all the counts on one verdict form and directed the jurors to consider each count separately. The jurors were then required to write "guilty" or "not guilty" in the space provided next to each count and to write in any special findings as required, such as dollar amounts at issue on certain counts. Each count on the verdict form repeated the elements of the charge and the particulars of the count. For example, Count G-6 was submitted to the jury as follows: "6. We find defendant Gary DeMastry _____

23

(insert 'Guilty' or 'Not Guilty') of Tampering with Evidence on or about February 27, 1998, by submitting to the State Auditor's Office a false affidavit dated February 27, 1998 regarding Check # 385 for the Sheriff's Furtherance of Justice Account, as charged in Count G6." This format was apparently in lieu of requiring the jurors to sign their names on 50 different forms. Appellant's trial counsel objected to the use of a single verdict form, although no authority was cited in support thereof. The trial judge replied that the court's chosen methodology "assists the jury and assists the process of all parties." Upon review, we are unable to find an abuse of discretion in the use of a single verdict form under the facts and circumstances of this case.

Exhibit G to Return of Writ.

Disposition. Although petitioner did revise his claim on appeal before the Ohio Supreme Court to assert that "his State and Federal Constitutional rights to a unanimous and impartial jury and to have his guilt properly proven beyond a reasonable doubt" were violated by the trial court's failure to issue separate verdict forms as to each count, *see* Exhibit H to Return of Writ, the Ohio Supreme Court does not typically consider claims not raised in the state appellate court below, *State v. Williams*, 51 Ohio St.2d 112 (1977), paragraph one of the syllabus, modified on other grounds, *State v. Gillard*, 40 Ohio St.3d 226 (1988), and petitioner did not thereby sufficiently present his federal constitutional claim to the state courts so as to preserve such claim for federal habeas corpus review. Additionally, petitioner has failed to establish cause and prejudice for his failure to present claim six to the state courts as a federal constitutional issue. Such claim therefore is waived.

## IV. CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial because prosecution witness Tim Grandy testified that Grandy signed receipts at DeMastry's request falsely indicating that DeMastry paid Grandy for working as a confidential informant when the jury trial charges did not include charges

involving the falsified receipts signed by Grandy, as these charges had been severed for trial at a later date. Petitioner asserts that Grandy's testimony constituted impermissible evidence of other bad acts by petitioner, the introduction of which resulted in a fundamental miscarriage of justice. *See Traverse*.

The Ohio Court of Appeals rejected petitioner's claim as follows:

> [A]ppellant contends that the trial court erred in allowing the introduction of other-acts evidence against him during the state's case in chief. We disagree.
>
> Appellant specifically challenges the allowance of the testimony of Tim Grandy, an antiques dealer and former deputy sheriff. Grandy had been previously designated as an informant by appellant but testified at trial that he did not perform such a role. He recalled that appellant asked him repeatedly for a favor in the form of signing some blank cash receipt forms, so that appellant could "cover spent money" from the FOJ fund. Grandy stated that he had initially told appellant that he could not comply, as he had already told the Grand Jury that he had never received informant money from appellant. Nonetheless, according to Grandy, appellant arranged a meeting with him in a cemetery outside Lancaster, at which time Grandy signed 24 blank receipts. Grandy told BCI agents about the planned meeting, and they observed the encounter.
>
> Appellant's trial counsel twice objected to Grandy's testifying, arguing that the counts pertaining to falsified receipts obtained from Grandy had been severed from the 50 counts in the present case. In allowing Grandy to testify, the trial judge, rather than performing an Evid.R. 404(B) other-acts analysis, instead held that "the real issue is whether or not there is evidence that there is a false informant which was reported to the Grand Jury, which is a charge." During Grandy's testimony, the trial judge gave the following instruction to the jury: "Ladies and gentlemen, there is no charge in this case that asserts the use of false receipts from Mr. Grandy. This evidence is received for whatever significance it may have to you connected with the other charges."
>
> The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 31 OBR 375, 510 N.E.2d 343. As a general rule, all relevant evidence is

admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconsciably in allowing the disputed evidence. *See State v. Oman* (Feb. 14, 2000), Stark App. No. 1999CA00027, 2000 WL 222190. Furthermore, juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. Upon review of Grandy's testimony in light of the entire transcript, we are not persuaded that the trial court abused its discretion in allowing the disputed evidence with the aforesaid limiting instruction.

Appellant's ninth assignment of error is overruled.

Exhibit G to Return of Writ.

Disposition.  Again, a trial court's ruling on state evidentiary matters generally will not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process.  *Cooper v. Sowders*, *supra*, 837 F.2d at 286; *see also Walker v. Engle, supra*, 703 F.2d at 962.  The federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged.  *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).  Here, the admission of the evidence complained of did not deprive petitioner of a constitutionally fair trial.

As noted by the state appellate court, the trial court admitted Grandy's testimony regarding whether he had received money from DeMastry as "directly related to one of the charges... of giving false information to the Grand Jury."  *Transcript*, at 2754.  Additionally, the trial court issued a cautionary instruction as follows:

> Ladies and gentlemen, there is no charge in this case that asserts the use of false receipts from Mr. Grandy.  This evidence is received for whatever significance it may have to you connected with the other charges.

26

*Id.*, at 2766.  Further, the State argued that Grandy's testimony was admissible under Ohio law despite severance of charges involving use of false receipts signed by Grandy, as evidence of DeMastry's attempt to conceal his improper use of funds.  *See Brief of Plaintiff-Appellee, State of Ohio,* Exhibit F to Return of Writ.

In *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit held:

> There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief.  502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5, 112 S.Ct. 475. Moreover, in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64, 87 S.Ct. 648. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564, 87 S.Ct. 648. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Id.; see also Dixon v. White,* 366 F.Supp.2d 528, 541-42 (E.D. Michigan 2005); *Watts v. Roper,* 2006 WL 2708630 (E.D. Mo. September 20, 2006)(same).  In view of the foregoing, and other strong evidence of guilt, petitioner simply has failed to establish that federal habeas corpus relief is warranted

due to admission of Grandy's testimony against him.

Claim three is without merit.

## V.  CLAIM FOUR

In claim four, petitioner asserts that he was denied a fair trial due to the extensive media coverage and publicity surrounding his case.  The Ohio Court of Appeals denied this claim as follows:

> [A]ppellant argues that the trial court failed to provide a fair and impartial jury. We disagree.

> "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." *State v. Trummer* (1996), 114 Ohio App.3d 456, 461, 683 N.E.2d 392, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301. A juror " * * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." *State v. Duerr* (1982), 8 Ohio App.3d 404, 8 OBR 526, 457 N.E.2d 843, paragraph two of the syllabus.

> Appellant incorporates into his challenge to the *voir dire* process an argument suggesting the prejudicial influence of media coverage on the jury. Although he cites a number of cases in support of his position, including the well known *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 and *United States v. McVeigh* (W.D. Okla.1996), 918 F.Supp. 1467, appellant fails to cite a single recitation from the record revealing any potential juror impartiality or adverse pretrial publicity. *See* App.R. 16(A)(7).

> We therefore find that appellant has not contradicted the presumption of regularity accorded all judicial proceedings. See *State v. Robb* (2000), 88 Ohio St.3d 59, 87, 723 N.E.2d 1019, quoting *State v. Hawkins* (1996), 74 Ohio St.3d 530, 531, 660 N.E.2d 454. Appellant's eleventh assignment of error is overruled.

Exhibit G to Return of Writ.

Disposition. The decision of the state appellate court is presumed to be correct. 28 U.S.C. §2254(d), (e). Petitioner has failed to establish that the state court's decision is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra.*

According to petitioner, negative media coverage and pre-trial publicity was so great that the trial court never should have attempted to seat a jury without granting his request for a change of venue. *Traverse*, at 21. Petitioner additionally contends that the trial court improperly berated jurors "for holding preconceived notions" regarding petitioner's guilt. He argues that the

> jury pool was too afraid to set forth their true feelings. Instead of obtaining true and honest answers from jurors, the jury pool dutifully nodded their heads that they could be fair and impartial....

*Id.*, at 23. Also, petitioner contends that defense counsel improperly was limited in asking questions during *voir dire* "due to fear that probing questions would elicit damaging statements" about petitioner's guilt. Petitioner's arguments are entirely without support.

As moted by the Ohio Court of Appeals, petitioner fails to refer to any portions of the trial transcript supporting his claim, and the Court is unable to locate in the trial transcript any indication that any of the jurors were improperly biased due to exposure of media coverage in this case or that petitioner thereby was denied a fair trial. Further, the record fails to reflect either that petitioner objected to any statements by the trial court during *voir dire*, or that the trial court berated or otherwise improperly admonished any potential jurors who stated that they could not give petitioner a fair trial. To the contrary, the trial court, for example, advised the jury in relevant part:

> The next subject I want to talk to some of you about is any views you

29

have regarding this specific case. Some of you have indicated that you have seen reference to this case in newspapers or on television or some other source of public information, or just heard gossip over the back fence, or some of your neighbors have suggested some thoughts. There are all sorts of things of this sort.

And we're pleased that you bring those things to our attention. The real question that I have to have your help, for those of you who have any problem in this regard, is whether whatever information you have had will prevent you from being fair and impartial at the trial of this case.

\*\*\*

The media have a duty and responsibility to report things, but they can't possibly report them in the way that this courtroom will examine them. You may have noticed if you saw anything on television or in the newspaper, they don't have a statement that each lawyer cross-examined that witness. That's just impossible for them. And so some of the information that the newspapers or television have may be interesting, but it does not look anything like the trial where we explore in great detail with everyone interested having an opportunity to question whatever witnesses they wish to present.

\*\*\*

My real question is whether you can put aside whatever you have heard in the back fence gossip from your co-workers, from your neighbors, from the television, from the newspapers, and decide this case on the basis of the rules of law that I give you and the evidence that you hear in the courtroom, and nothing else.

Now, with that explanation, can you tell me which of you believe you still would have a problem because of anything you've seen or heard in this case?

Do any of you feel that you have a problem in being fair to both sides, to both the State and the Defendants, and to decide this case solely on

30

the law and th evidence without regard to anything you've heard before?

*Transcript,* at 123-125; *see also* 125-130.  The trial judge further stated:

> I'm now going to be asking some of you about any knowledge or opinion you may have regarding this case.  It is my understanding that there have been various newspaper articles and television broadcasts relating to this matter.  And some of you in your questionnaires have indicated that you were aware of those things and may even have formed some opinions.

> My responsibility is to make sure that the jurors can be fair and impartial to both sides and that means to put aside any impression or conclusion they may have formed previously and decide the case on the basis of the law that I give you and the evidence that the jurors receive in the courtroom, not some other source.

> News media have very substantial limitations about what they can or cannot provide anybody.  You get one or two paragraphs, 20 seconds, 30 seconds on the television broadcast, for something which we will spend perhaps several hours in having everyone explore whatever questions they may have about the matters from specific witnesses, not just generalities.  Hopefully, a trial provides enormously more accurate and helpful information than could possibly come from news media.

> At the same time, I have to be aware that some people... they've already reached – made up their mind.... And obviously, that would be a problem for us to have them as jurors.

> ... Are there any of the prospective jurors who believe that whatever information they have received from news media or conversations with neighbors or gossip or any other source would make it difficult for them to be fair or impartial to both sides... ?

*Id.*, at 317-318; *see also* 318-333.

Potential jurors had answered a written questionnaire prior to being questioned in court.  At

31

the request of defense counsel, some potential jurors who had indicated potential bias against De-Mastry in their written responses were questioned individually to prevent prejudicial statements being made in front of other potential jurors. *Id.*, at 200-207; 233.  Nothing in the record indicates any prejudice to petitioner from media coverage in this case.

> [I]n extreme cases, pretrial publicity can be so pervasive and prejudicial as to create a presumption that the defendant cannot receive a fair trial without a change of venue.

*Turnage v. Wilson,* 2006 WL 2380623 (N.D. Ohio August 14, 2006), citing *Irvin v. Dowd*, 366 U.S. 717 (1961), *Rideau v. Louisiana,* 373 U.S. 723 (1963);*Sheppard v. Maxwell,* 384 U .S. 333 (1966); *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir.2002).   However,

> [p]resumed prejudicial publicity occurs only in the rare case where the "the trial atmosphere [has] been utterly corrupted by press coverage." *Murphy v. Florida,* 421 U.S. 794, 798 (1975). The petitioner bears the burden of showing utter corruption of the proceedings. *See Dobbert v. Florida,* 432 U.S. 282, 303 (1976)(petitioner proved only that jury pool was well aware of the case). The petitioner does not meet his burden simply by showing that the community has "extensive knowledge" of the alleged crimes or criminal. *Id.* If the petitioner cannot establish presumed prejudice, he must show actual prejudice if he is to succeed in his claim that he did not receive a fair trial. *Ritchie,* 313 F.3d at 956.

*Id*.  Petitioner has failed to meet that burden here.

> It is not required... that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to

> establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irwin v. Dowd, supra,* 366 U.S. at 722-23 (citations omitted).

Claim four is without merit.

## VI.  CLAIM FIVE

In claim five, petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).  Petitioner presented the claim to the state courts in a December 10, 2004, motion to vacate sentence, which was denied by the state trial court as an untimely petition for post conviction relief, and as barred under Ohio's doctrine of *res judicata. See* Exhibit R to Return of Writ.  The Ohio Court of Appeals affirmed the trial court's dismissal of petitioner's *Blakely* claim as follows:

> Appellant argues that the trial court erred when it refused to resentence appellant pursuant to *Blakely v. Washington.* We disagree.
>
> Appellant's motion to vacate sentence and resentence was, in essence, a motion for postconviction relief. *See State v. Reynolds* (1997), 79 Ohio St.3d 158, 679 N.E.2d 1131, syllabus. In reviewing a trial court's denial of a petition for postconviction relief, absent a showing of abuse of discretion, we will not overrule the trial court's finding if it is supported by competent and credible evidence. *State v. Delgado* (May 14, 1998), Cuyahoga App. No. 72288 (citing *State v. Mitchell* (1988), 53 Ohio App.3d 117, 120, 559 N.E.2d 1370). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
>
> The trial court found that appellant's petition was untimely. "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one

hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication ⋯" R.C. 2953.21(A)(2) (in relevant part).

Appellant pursued a direct appeal. Therefore, to be timely, appellant's petition for postconviction relief had to be filed within 180 days of the filing of the transcript in the court of appeals. In this case, the transcript was filed on September 30, 2002. Appellant had 180 days from that date to file a timely petition for postconviction relief. However, appellant filed his motion on December 10, 2004, more than 26 months later. Accordingly, appellant's motion is untimely.

A court has no jurisdiction to hear an untimely petition for postconviction relief unless the movant meets the requirements in R.C. 2953.23(A). *State v. Warren* (Dec. 14, 2000), Cuyahoga App. No. 76612; *State v. Valentine* (Dec. 7, 2000), Cuyahoga App. No. 77882; *State v. Wheatt* (Oct. 26, 2000), Cuyahoga App. No. 77292; *State v. Gaddis* (Oct. 12, 2000), Cuyahoga App. No. 77058. Revised Code 2953.23(A) provides as follows, in pertinent part:

"Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless ⋯:

"Both of the following apply:

"(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

"(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for

34

constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. R.C. 2953.23(A)(1).

Appellant filed this petition for postconvction relief based upon *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 and the subsequent cases relying upon *Blakely, United States v. Booker* and *United States v. Fanfan* (decided together), (2005), --- U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621. Based upon our review of the record, we find that the trial court did not abuse its discretion when it concluded that appellant failed to meet the requirements of R.C. 2953.23(A)(1)(a).

First, the *Blakely* decision has no application in the case *sub judice*. In *Blakely,* the Supreme Court held that to avoid a violation of the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely* at 2536 (quoting *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435). However, in this case, the trial court did not sentence appellant to any term beyond a statutory maximum. Therefore, the *Blakely* decision does not apply. *See State v. Hoke,* Knox App. No. 05CA5, 2005-Ohio-3548. Thus, appellant has not met the requirements of R.C. 2953(A)(1)(a).

Further, we find that appellant cannot meet the requirements of R.C. 2953.23(A)(1)(b) either. The issues raised by appellant do not relate to his conviction or to a death sentence. *State v. Graber,* Stark App. No.2004CA00344, 2005-Ohio-2413.
Accordingly, this court finds that the trial court did not abuse its discretion when it denied appellant's motion. Accordingly, appellant's assignment of error is overruled.

The Judgment Entry of the Fairfield County Court of Common Pleas is affirmed.

Exhibit S to Return of Writ. Respondent does not argue that claim five is procedurally defaulted.

Procedural default is an affirmative defense. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Gray v.*

*Netherland,* 518 U.S. 152, 166 (1996).  Instead, respondent contends that *Blakely* is inapplicable to petitioner's sentence.

Disposition.   On June 22, 2004, when his time expired for filing a petition for a writ of *certiorari* to the United States Supreme Court from the Ohio Supreme Court's March 24, 2004 order dismissing his direct appeal, petitioner's conviction became final.[4]  This was two days before the United States Supreme Court's June 24, 2004, decision in *Blakely.*  Since DeMastry's convictions became final before *Blakely* was decided, *Blakely* is not applicable to petitioner's sentence.  *Humpress v. United States, supra* (holding that Blakely is not to be retroactively applied to cases on collateral review.)  Thus, *Blakely* does not provide petitioner the relief he seeks.

## VII.  CLAIMS SEVEN AND EIGHT

In claims seven and eight, petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to assert on appeal that he was denied his right to confront witnesses against him when prosecution witness John Monce, head of the special audit investigation of the sheriff's office, testified to "verbal acts" of Penny DeMastry, petitioner's wife and

---

[4]        State convictions are final " 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." ' *Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (quoting *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).

*Oswald v. Jones*, 2005 WL 3454659 (W.D. Michigan December 16, 2005); *see also Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).

36

co-defendant.  *Traverse*, at 35-41.  Petitioner also asserts that he was denied the effective assistance

of appellate counsel because his attorney failed to raise on appeal an issue regarding improper

restriction of his right to confront and cross-examine prosecution witness John Clark.  The state

appellate court rejected both of these claims in relevant part as follows:

> As a brief background, appellant was originally indicted in January
> 2000 on over 300 counts related to his service as an elected official,
> including theft in office, money laundering, and tampering with
> evidence.  Many of the counts pertained to appellant's activities
> surrounding a state audit of the sheriff department's Furtherance-of-
> Justice fund ("FOJ").  Additional charges were filed in May 2000 and
> December 2000.  Prior to the start of the trial in March 2001, the trial
> court severed 273 of the 323 total counts, deferring them until a later
> time.  The remaining 50 counts went to trial, following which the jury
> returned a verdict of guilty on 32 counts and not guilty on one count,
> while there was a hung jury on the remaining 17.

> Appellant first claims his appellate counsel was ineffective for failing to
> assign as error the admission at trial of audit investigator John Monce's
> testimony concerning co-defendant Penny DeMastry's "verbal acts."
> During the prosecutor's case-in-chief, the trial court permitted Monce,
> over defense objection, to testify concerning various financial logs and
> ledgers he had received from Penny.  Appellant essentially argues that
> Monce's testimony regarding Penny's verbal acts was not hearsay, but
> that the admission of one defendant's verbal acts as substantive
> evidence of a co-defendant's guilt may infringe upon the co-
> defendant's right of confrontation.  *See United States v. Francois*
> (D.D.C. 2003), 295 F.Supp.2d 60.  Thus, contends appellant, his
> original appellate counsel was ineffective for failing to raise this issue
> on appeal.

> Nonetheless we are unpersuaded that a "genuine issue" of ineffective
> appellate assistance has been demonstrated.  For example, 22 of the 32
> counts on which appellant was convicted were for evidence tampering
> or complicity in evidence tampering.  Appellant does not negate the
> State's observation that the jury's verdicts on most of these counts
> were based on evidence independent of evidence involving Penny, and
> that out of the fifty original counts, the first four, which alleged or were
> related to Penny's involvement, did not result in guilty verdicts against

37

appellant. As the United States Supreme Court has maintained, appellate counsel is not required to raise every possible issue in order to render constitutionally effective assistance.  *See Jones v. Barnes* (1983), 463 U.S. 745.

Appellant's claims regarding "verbal acts" evidence are accordingly hereby denied.

Appellant further claims his appellate counsel was ineffective for failing to raise proposed errors in the trial court's rulings regarding the testimony of prosecution witness John Clark, a former sheriff deputy. Clark testified at trial, *inter alia*, that appellant had ordered him to sign false affidavits and to falsely state he (Clark) had connections to certain paid informants.  Appellant claims appellate counsel should have raised (1) the trial court's curtailing of inquiry into whether Clark reimbursed himself with FOJ funds; (2) the court's refusal to allow Clark to have his recollection refreshed under Evid.R. 612; and (3) the court's refusal to permit defense inspection of Clark's grand jury testimony.

An appellate court's standard of review on most evidentiary matters is that of abuse of discretion.  *See State v. Rahman* (1986), 23 Ohio St.3d 146, 152; *State v. Sage* (1987), 31 Ohio St.3d 173, 180.  Clark admitted to lying during the auditor's investigation; we are unpersuaded that appellant's counsel's decision not to pursue challenges to the discretionary evidentiary rulings concerning this witness fell below a standard of reasonable representation.  Furthermore, appellant herein does not sufficiently develop how and where a "particularized need" for the grand jury testimony was established at trial.  *See State v. Mack* (1995), 73 Ohio St.3d 502.

Appellant's claims regarding Clarke's testimony are accordingly denied.

Exhibit L to Return of Writ.

Penny DeMastry's statement to Monce.  The Ohio Court of Appeal's decision is presumed to be correct.  28 U.S.C. §2254(d), (e).  Petitioner has failed to establish that the state court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra.*

38

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776 (1987). Defendants appealing their criminal convictions enjoy the same Sixth Amendment right to the effective assistance of counsel on a direct appeal as of right that they have during trial. While appellate counsel

is not expected to raise every nonfrivolous issue on direct appeal, counsel is obligated to provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). As with an ineffective assistance of trial counsel claim, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 696; *Sims v. Livesay,* 970 F.2d 1575, 1579-81 (6th Cir.1992). Petitioner has failed to meet this standard here.

　　　As noted by the state appellate court, Monce testified that, prior to initiation of the special audit of the Sheriff's Department and in a response to a letter from the State Auditor asking for receipts and documentation for monies spent by DeMastry from the FOJ account, *see Transcript,* at 773, Penny DeMastry gave Monce a box of logs itemizing monthly expenditures by the sheriff's office out of the FOJ account in 1994. *Id.,* at 786-87, 789. However, the logs Penny DeMastry provided did not include receipts or any other documentation by which Monce could verify how money had been spent. *Id.,* at 789, 792. Therefore, in April 1998, Monce met with petitioner, Penny DeMastry, and DeMastry's attorney to explain to them that the auditor's office was unable to document expenditures from the FOJ account. *Id.,* at 804. Monce said:

> We had made numerous requests for receipts and detailed documentation that would explain these logs and had received nothing.

*Id.* At this meeting, Monce told Penny DeMastry that

> the alleged total moneys received by some of the officers did not match up with the month-by-month, item-by-item expenditure.

*Id.,* at 805. Petitioner complains that Monce then testified as follows:

40

> Q.  Did [Penny DeMastry] advise you as to what information she prepared the logs from?
>
> A.  Yes, she did.
>
> Q.  And what was that?
>
> A.  Specific material that had been collected by the detectives.

*Id*.  Petitioner complains that Monce further testified:

> Her comments were that she had prepared these logs from records that had been assembled by the detectives and other officers as a means to respond to the letter that we had drafted in February.  She prepared these logs specifically to make it less confusing for us to be able to track the specific expenditures.

*Id*., at 813-814.  The trial court admitted such testimony over the objection of defense counsel as follows:

> In addition to 801(D)(2)(a), a statement by an adverse party which directly applies to Penny DeMastry, I find the basis for admitting those statements against Gary DeMastry under 801(D)(2)(b), an adoptive admission; 801(D)(2)(c), statement by someone authorized to speak on behalf of a defendant; and 801(D)(2)(d), an agent of the defendant.
>
> I think the evidence up to this point indicates that Penny DeMastry was an employee of Gary DeMastry who had responsibilities in this area; therefore, statements that she makes relating to her activities are attributable to and ordinarily admissible against her employer.  And here, we don't have a confrontation problem, as I view it, because he was physically present at the time....

*Id*., at 819.

Ohio Evidence Rule 801(D)(2)(a)-(d) provides:

41

(D) Statements which are not hearsay

A statement is not hearsay if:

***

(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement.

Petitioner, however, argues:

> The prosecution's theory was that the entries in the expense logs had been fabricated, and that Penny had lied when she told investigators that the information had been obtained from the officers. The prosecution theorized that Gary knew the logs were false and/or had ordered Penny to falsify the logs and assist him by covering that fact up during her interview with Monce. These statements formed the basis of many of the charges against DeMastry in the form of affidavits prepared from the logs. If the logs were falsified and inaccurate, the affidavits were also falsified and inaccurate. DeMastry was convicted of numerous counts involving the affidavits.

*Traverse*, at 35-36.

Disposition. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). On March 8, 2004, just prior to the Ohio Supreme Court's March 24, 2004, dismissal of petitioner's direct appeal, the United States Supreme Court in *Crawford v. Washington*, 124 S.Ct. 1354 (2004), abrogated *Ohio v.Roberts*, 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation

Clause.  The Supreme Court held in *Crawford v. Washington*, *supra*, that testimonial statements of

a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify

and the defense had a prior opportunity for cross-examination:

> Where testimonial evidence is at issue ... the Sixth Amendment
> demands what the common law required: unavailability and a prior
> opportunity for cross examination.

*Id.*, at 1366.   However,

> [t]he Court explicitly left untouched the application of *Roberts* to cases
> involving nontestimonial hearsay: "Where nontestimonial hearsay is at
> issue, it is wholly consistent with the Framers' design to afford the
> States flexibility in their development of hearsay law-as does *Roberts,*
> and as would an approach that exempted all such statements from
> Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68,
> 124 S.Ct. 1354. As the courts applying *Crawford* have observed,
>
> [t]he lynchpin of the *Crawford* decision thus is its distinction between
> testimonial and nontestimonial hearsay; simply put, the rule announced
> in *Crawford* applies only to the former category of statements⋯
> [U]nless a particular hearsay statement qualifies as "testimonial,"
> *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Michigan 2006), citing *United States v. Hendricks,* 395

F.3d 173, 179 (3d Cir.2005); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir.2004); *United States v.*

*Johnson,* 354 F.Supp.2d 939, 964 (N.D.Iowa 2005); *United States v. Savoca,* 335 F.Supp.2d 385,

391-92 (S.D.N.Y.2004).  The Supreme Court declined to spell out a comprehensive definition of the

term "testimonial," but stated that, at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a
> former trial; and to police interrogations.  These are the modern
> practices with closest kinship to the abuses at which the Confrontation
> Clause was directed.

*Crawford v. Washington, supra,* 124 S.Ct. at 1374.  A causal remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment.  *Id*., at 13645, 1367.  Further,

> [t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted.

*United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005).

A violation of the Confrontation Clause is subject to harmless error review.  *Id*., at 400, citing *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir.2005).

> Unless a constitutional error has a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), it will be considered harmless.

*Dorchy v. Jones*, 398 F.3d 783, 791 (6th Cir. 2005).

Penny DeMastry's statement that she had prepared the logs she gave Monce from information assembled by detectives did not constitute otherwise inadmissible hearsay, but was admitted as non-hearsay as petitioner's adoptive statement under Ohio's Evidence Rules.  Petitioner nonetheless contends the Penny DeMastry's statement violated his right to confront witnesses against him under the reasoning of *United States v. Francios*, 295 F.Supp.2d 60 (D.D.C. 2003), wherein the United States District Court for the District of Columbia held that admission of a non-testifying co-defendant's statement against interest to the FBI at a joint trial,  even for non-hearsay purposes, violated the defendant's right to confront witnesses against him.  The District Court reasoned that

44

admission of such statement violated the Confrontation Clause

> because the statement is so intertwined with other evidence that the government will introduce to establish that Dorcely's identical conduct was an overt act of the conspiracy charges against defendant Francois, it is more likely that the jury would not limit its use of the statement as instructed.

*Id.*, at 74.  The circumstances are not analogous here.  As discussed, the trial court admitted Penny DeMastry's statement as petitioner's adoptive admission.  DeMastry was present with his wife and his attorney when she made the statement complained of.  Moreover, it is apparent that the testimony about Penny DeMastry's statement that the log was based on records assembled by the detectives and other officers was not offered for the truth of the matter asserted.  The prosecution offered the statement as one made by a conspirator in the course of the conspiracy to mislead the investigators.  Monce was on the stand and subject to cross-examination.  Consequently, the admission of Penny DeMastry's statement into evidence did not violate petitioner's right to confront witnesses.  Further, petitioner has failed to establish that the state court's decision concluding that Penny DeMastry's statement did not prejudice petitioner was unreasonable under 28 U.S.C. §2244(d).

Clark cross-examination.  Petitioner also complains that he was denied the right to cross examine prosecution witness John Clark on Clark's prior statement(s) to Special Agent Cliff Evans, which statement(s) were contained in Evans' notes[5] and on Clark's memory as to how much money Clark reimbursed himself from the FOJ account.  Petitioner also asserts that the trial court improperly refused to conduct an *in camera* review of Clark's grand jury testimony.  Petitioner asserts that

---

[5]  Petitioner failed to include in the record before this Court the content of Clark's statement or statements to Evans that he sought to use on cross examination.  *See Petition*, at 10; *Traverse*, at 43.

appellate counsel was constitutionally ineffective for failing to raise the foregoing issues on appeal.

Clark testified that he had been employed with the sheriff's department since 1985.  He was hired by DeMastry.  *Transcript,* at 1999.  He left the sheriff's office in February 1997 to pursue other employment, but returned in June 1998.  He began as a special deputy, and later was promoted by DeMastry to lieutenant.  *Id.*, at 2000.

Penny DeMastry was office manager of the Sheriff's department and the book keeper of the FOJ and LETF accounts.  *Id.*, at 2006.  Clark never received any proceeds from a January 24, 1997, check for $4,000.00, written to Penny DeMastry, and marked for "community policing."  *Id.*, at 2008.  Penny DeMastry's affidavit stating that he had received such funds was false.  *Id.*, at 2009.  Clark cashed numerous checks for DeMastry.  Clark returned almost all of the proceeds of such checks he cashed to DeMastry.  *Id.*, at 2011-2029.  DeMastry and Clark had been close friends.  *Id.*, at 2031.  The Sheriff said that the audit was a "political witch hunt, and ... no big deal."  *Id.,* at 2033.  Penny DeMastry prepared the (false) FOJ logs provided in response to the audit.  *Id.*, at 2043-46.

In June 1999, the auditor subpoenaed Clark.  *Id.*, at 2048.  In response, DeMastry told Clark, as well as Major Marc Grimm, Mike Schorr, and David Peck, that they would see DeMastry's attorney in Columbus.  DeMastry told them to lie to his attorney.  *Id.*, at 2049-2050.  The Sheriff told Clark to lie and say that Clark had paid numerous confidential informants for information on narcotics.  *Id*.  Clark lied to the auditor as he had been directed by DeMastry to do.  *Id.*, at 2051.  He regretted it.  *Id.*  Clark further testified, "[T]he Sheriff gave us a story to deliver to his lawyer and to the Auditor's office."  *Id.*, at 2052.  DeMastry later told Clark to stick to the story,  "nothing would happen and it would all go away, and we needed to protect the office.*"  Id.*, at 2054.

John Monce interviewed Clark. *Id.*, at 2056. Clark lied to Monce. *Id.*, at 2057. Clark lied when he told Monce that he had informants and that he paid informants and business people as the documents provided to Monce said that he did. *Id.*, at 2058-59. Clark did not think the story was believable, as "the figures didn't add up." *Id.*, at 2059. Clark's statements that he had confidential informants that he paid from FOJ funds was "a total fabrication." *Id.*, at 2060. Clark also signed numerous false affidavits, as did the other officers, to support his lies and to support the false FOJ logs that had been provided the auditor, indicating that he had paid confidential informants. *Id.*, at 2061-2069.

In April, the special audit released findings concluding Clark had misspent $33,000.00, *id.*, at 2069, and DeMastry met with Clark about those findings:

> We discussed it and the sheriff had called a meeting with all the officers who had signed affidavits who were in the audit and advised us that he had good lawyers handling this and this is still a political witch hunt; that, you know, we needed to stick together as a team and don't hire our own lawyers and this thing would be worked out.

*Id.*, at 2070. Clark learned that

> there was a special grand jury going to be held in September and that the probe was starting to dig in. And in October of that time, the sheriff had instructed me to go home and make falsified records to cover all of my expenditures, my FOJ, and records on the militia.

*Id.*, at 2074. At that point, Clark decided to leave the sheriff's office, hire a lawyer, contact the special prosecutors and tell them the truth. *Id.*, at 2075.

Clark's attorney called the prosecutor's office and arranged a meeting. *Id.* Clark did not tell DeMastry what he was doing. *Id.*, at 2076. According to Clark, "It was an intimidation and a bully

47

type atmosphere. The sheriff was not himself. His personality had changed." *Id*., at 2076. Clark was subpoenaed to appear before the Fairfield County grand jury on November 19, 1999. *Id.*, at 2077.

DeMastry met with Clark the morning he was to testify before the grand jury and told him how to lie to the grand jury, and how to come up with the names of confidential informants to give the grand jury. *Id.,* at 2078-2079. DeMastry told Clark that he was preparing him so that he " would not be the loose link who would sink the ship." Clark testified that these "were the sheriff's words." *Id.*, at 2079. DeMastry was concerned because Clark was not a good liar. *Id.* Penny DeMastry was at that meeting. *Id.* It lasted from 8:00 a.m. until noon. *Id.* DeMastry told Clark:

> "Let's come up with some CI's that will go to the grave for you.
> You've got to know some business people that would lie for you. Do
> you know any business people that died that you can use?

*Id*., at 2080. Clark told DeMastry he did not have any names he could use. DeMastry said he would come up with names of CI's for Clark to give the grand jury. *Id.*, at 2081. DeMastry later gave Clark a list of five names of confidential informants to give the grand jury. *Id.*, at 2091-2093. DeMastry told Clark to "take the Fifth" "if you feel that there's too much heat." *Id.*, at 2093.

Clark appeared before the grand jury that afternoon. He exercised his Fifth Amendment right not to incriminate himself. *Id.*, at 2095. DeMastry told Clark he had done a good job. *Id.*, at 2096. No criminal charges had been filed against Clark, nor had any efforts been made for reimbursement of undocumented FOJ funds from Clark. *Id.* Clark had not received any promise of immunity or plea bargain from the prosecutor. *Id.*

The confrontation clause gives a defendant an opportunity to cross-examine his accusers, but it does not guarantee the defense the right to conduct a completely unfettered examination:

> An essential component of the confrontation clause is the accused's right to cross-examine the state's witnesses. *Davis v. Alaska,* 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the Sixth Amendment "guarantees an *opportunity* for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) ( *per curiam* ). ... "[A] trial court has discretion to limit the scope of cross-examination ···· This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues ··· or interrogation that is repetitive or only marginally relevant." *Boggs v. Collins,* 226 F.3d 728, 736 (6th Cir.2000), *cert. denied,* 532 U.S. 913, 121 S.Ct. 1245, 149 L.Ed.2d 152 (2001) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

*Miskel v. Karnes,* 397 F.3d 446, 452 (6th Cir. 2005); *see also Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir. 1998)(no Confrontation Clause violation by prohibiting cross examination where relevance of questions is unclear and risk of prejudice is real)(citations omitted).

> [A]n accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff,* 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)( *quoting Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)).

*Dell v. Straub*, 194 F.Supp.2d 629, 644 (E.D. Michigan 2002).

The record fails to reflect that petitioner was denied his right to cross examine Clark.  Clark asserted his Fifth Amendment right against self incrimination, and therefore did not testify before the grand jury. Also, and contrary to petitioner's allegation here, the record indicates that the trial court permitted defense counsel to cross examine Clark with possibly prior inconsistent statements Clark made to Agent Evans.  *See* 2104-2106.[6] Likewise, and again contrary to petitioner's allegations here,

---

[6]        COURT: Please give me the words that you say are inconsistent.

the record fails to reflect that defense counsel was unable to cross examine Clark regarding amounts of money Clark reimbursed himself from checks he cashed for DeMastry. *See, e.g., Transcript*, at 2132-2136; 2141-2143.

In short, petitioner has failed to establish the ineffective assistance of appellate counsel due to his attorney's failure to raise on appeal issues regarding the denial of petitioner's right to confront or cross examine witnesses.

Claims seven and eight are without merit.

## X.  CLAIM NINE

In claim nine, petitioner asserts that his guilty plea was not knowing, intelligent, or voluntary,

---

\*\*\*

KRAVITZ: Narcotics.

COURT: That could be an inconsistency.  I'll permit you to ask about that.

\*\*\*

Okay?  I'll permit you to use the statement to ask him about whether or not he told Evans that he was involved in narcotics. Okay?  Anything else?

KRAVITZ: That he gave 8,000 to 12,000 - last paragraph.

COURT: All right.

\*\*\*

I do not find that that language is inconsistent.... [h]owever... I will permit it....

*Transcript,* at 2104-2108.

and that he was denied due process because the State breached its promise not to seek any further criminal or civil penalties pursuant to the terms of petitioner's guilty plea, and that the trial court erred in refusing to enforce the terms of the plea agreement by requiring the State of Ohio to dismiss its civil action petitioner.  Petitioner asserts that the prosecutor breached the terms of his guilty plea when, on June 16, 2003, plaintiff, Fairfield County filed a civil law suit against him and other defendants. Petitioner first raised this claim in a November 30, 2004, motion for specific performance of his guilty plea agreement.  Exhibit O to Return of Writ.

Respondent contends that, because petitioner requested in the state courts only specific performance of his plea agreement, *i.e.*, that the civil action against him be dismissed, he has failed to present in these habeas corpus proceedings a federal constitutional issue appropriate for federal habeas corpus review.  Although respondent argues that petitioner has raised "essentially a state law contract claim," *Return of Writ*, at 33-34, the petition alleges that petitioner's guilty plea was not knowing, intelligent, or voluntary and that the terms of his guilty plea must be enforced under *Santobello v. United States,* 404 U.S. 257 (1971).  *See Petition; Traverse*, at 47-55.  Accordingly, I conclude that the petition challenges the constitutionality of DeMastry's guilty plea.

Respondent also contends that petitioner failed to present his claim that his guilty plea was not knowing intelligent or voluntary to the state courts in the proper forum.  *Return of Writ*, at 33. Petitioner made clear in his motion for specific performance of the plea agreement "that he was not asking the trial court to permit him to withdraw his pleas."  *See Exhibit U, supra*.  He sought only "an order from the trial court that the State must live up to its end of the plea bargain by not pursuing the civil claims against" petitioner.  *Id*.  Petitioner never filed a direct appeal of his guilty plea, nor did he attempt to file a petition for post conviction relief, and he may still do so.

Disposition.  Because petitioner's claim that his guilty plea was not knowing, intelligent or voluntary relies on matters not readily apparent from the face of the record, it should have been raised in a petition for post conviction relief pursuant to O.R.C. §2953.2.  Respondent has not raised the affirmative defense of procedural default.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997)(failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(same).  However, the time period for filing a petition for post conviction relief has long since expired, and the record demonstrates that petitioner cannot meet the requirements for an untimely post conviction action under O.R.C. §2953.23, which provides in relevant part:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

*Id.* Here petitioner had knowledge of the facts giving rise to his claim no later than when he was served with the civil suit to recover monies he allegedly improperly accounted for as sheriff. Instead of filing a postconviction petition or seeking to reopen his direct appeal, DeMastry chose to file an application for specific performance of the plea agreement, disclaiming any intent to seek to withdraw his guilty pleas. Consequently, he cannot demonstrate good cause for failing to promptly file a postconviction petition or a motion to reopen his direct appeal once he learned the State had filed a civil action against him.

Alternatively, assuming that petitioner's claim that his guilty plea was not knowing, intelligent or voluntary is properly before this Court, the record fails to demonstrate that the state court's decision denying the claim is so unreasonable as to warrant federal habeas corpus relief. *See Williams v. Taylor, supra*; 28 U.S.C. §22254(d), (e).

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988)(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A criminal defendant cannot successfully challenge the voluntariness of his plea simply because the government is responsible for some of the factors motivating him to plead. *Brady v. United States*,

397 U.S. 742, 750 (1970).  However, the prosecutor must keep any promises he made in the plea

agreement.  *Bordenkircher v. Hayes,* 434 U.S. 357, 362 (1978).  When a prisoner challenges his guilty

plea on the basis that it was induced by an unkept promise, the Court must determine whether the

allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently

frivolous or false, as to warrant a summary dismissal.  *Blackledge v. Allison,* 431 U.S. 63, 76 (1977).

In applying this standard, courts will indulge a strong presumption that statements made by the parties

at the plea hearing were truthful.  *Id.* at 74.

> [T]he representations of the defendant, his lawyer, and the prosecutor
> at such a hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings.  Solemn declarations in open court carry a strong
> presumption of verity.  The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Id.* at 74.

Petitioner relies on *Santobello v. United States*, *supra*, 404 U.S. at 257.  There the prosecutor

agreed in a plea agreement not to make any recommendation at sentencing, but breached that promise

by recommending that the judge impose the maximum sentence.  In remanding the case to the state

trial court, the United States Supreme Court stated:

> The ultimate relief to which petitioner is entitled we leave to the
> discretion of the state court, which is in a better position to decide
> whether the circumstances of this case require only that there be
> specific performance of the agreement on the plea, in which case
> petitioner should be resentenced by a different judge, or whether, in the
> view of the state court, the circumstances require granting the relief
> sought by petitioner, *i.e.*, the opportunity to withdraw his plea of
> guilty.

*Id.,* at 263.

Here, petitioner asserts that the prosecutor agreed to a cap of $20,000 in restitution, and $5,000 on costs of prosecution to be paid by petitioner in resolution of all of the charges against him. *Traverse*, at 48. In support of this allegation, petitioner has attached an affidavit from William L. Summers, defense counsel, which states in relevant part:

> 2. I was counsel for Gary K. DeMastry in Fairfield County Case Nos. 00 CR 029, 0122 and 303. I was retained to represent Gary DeMastry after he was convicted and sentenced in his first trial in January, 2002. . . .

> 3. As part of my representation of Gary K. DeMastry, I negotiated a resolution of the cases with the Special Prosecutors.... On absolute, non-negotiable precondition to the settlement and guilty plea was that Gary DeMastry was that [sic] his guilty plea would resolve ALL pending possible or future claims, criminal and/or civil. Other than his appeal of his criminal conviction, Gary DeMastry would only agree to resolve all of his remaining criminal cases if it absolutely would end any future litigation, costs, or fees (with the above exception noted) related to the special audit and charges filed against him and others.

> 4. A representative of the Ohio Attorney General's office was present during the negotiations and at the hearing where the Court accepted my client's plea.

> ***

> 7. Capping the figure that Gary DeMastry would owe the State of Ohio at $20,000 was a major portion of the basis for entering the plea in this matter and the figure selected by the State of Ohio with the concurrence of the representative of the Attorney General's Office participating in and getting authorization.

> 8. We were ALL very concerned with finality and ending all matters involving Gary DeMastry and the State of Ohio with the exception of

55

his right to continue the direct appeal of his criminal conviction.  I made sure that I placed our objection on the record that if the $20,000 did not resolve everything, criminal and civil, we would not accept the plea offer....

9.  I made my position clear both on the record and prior to going on the record, in private with the Special Prosecutors... and the Attorney General's representative, for the State of Ohio.

10.  They were in full agreement with a resolution that guaranteed that this would be the last proceeding, civil or criminal, that Gary DeMastry would have to defend, unless his criminal convictions were reversed and he received a new trial.

11.  It was made absolutely clear that the Prosecutors had approval to resolve the case in the fashion that it was resolved and it would be binding on the State of Ohio and its agents.

12.  As I stated on the record, the fact that the State of Ohio could not sue Gary DeMastry for anything beyond the $20,000 ordered as part of the plea agreement and that DeMastry would not have to defend against any other charges, civil or criminal, was a major part of the plea agreement.

13.  Without such an agreement, I can say with absolute certainty that my client would not have accepted the plea agreement, nor would I have advised him to accept such an agreement.

14.  Moreover, I am equally positive that, the prosecutors represented to me and assured us that this would end all past or future matters (except DeMastry's appeal of his criminal convictions) involving Gary DeMastry.

*Affidavit of William L. Summers,* Exhibit O to Return of Writ.

Both the trial court and the Ohio Court of Appeals rejected DeMastry's argument that the

State of Ohio's civil suit was barred by the plea agreement.  The trial court denied petitioner's motion

for specific performance, in relevant part, as follows:

> [T]his Court scheduled a trial for another fifty counts in these cases to
> begin on October 15, 2002. After procedural delays... the court was
> ready to begin jury selection on October 17, 2004. The parties then
> advised the court that they had reached a plea agreement, which they
> proceeded to report on the record.

> By that plea agreement, the defendant would plead guilty to five counts
> from the second fifty with an agreed sentence of concurrent prison
> terms that aggregated three years, which would run concurrently with
> the aggregated six year concurrent sentences for the previous 32
> convictions. Subject to other designated terms, the state would then
> dismiss the remaining 268 counts, but the agreement would not affect
> any further proceedings for the 32 convictions or the 17 unresolved
> counts in the first trial.

> This Court accepted those five guilty pleas and orally sentenced the
> defendant on October 17, 2005. Thereafter, this Court filed its
> sentencing judgment for those five counts with dismissals for other
> counts on October 31, 2002. The sentencing judgment imposes no
> restriction on the State of Ohio or Fairfield County to pursue any civil
> remedy. The defendant did not appeal from that judgment.

> ***

> On June 16, 2003, pursuant to R.C. 117.28, the Attorney General filed
> a civil Complain on behalf of Fairfield County, which asserted to the
> auditor's findings for recovery against Gary DeMastry and eighteen
> other defendants. On August 21, 2003, Gary DeMastry filed his
> answer to that Complaint, in which he denied the County's claims and
> asserted nine affirmative defenses including otherwise unspecified
> waiver and estoppel. He did not specifically assert the plea agreement
> as an affirmative defense.

> With leave of court, the plaintiff County filed an Amended Complaint
> on June 1, 2004. Gary DeMastry filed his Answer to that Amended
> Complaint on July 14, 2002, which asserted as an affirmative defense:

Plaintiff's claims against Gary DeMastry are barred due to estoppel because the Special Prosecutor's [sic] resolved all financial claims against Gary K. DeMastry in exchange for his guilty pleas in the Portage County Common Pleas Court.

On November 12, 2004, Gary DeMastry filed a summary judgment motion in that civil case, which relied upon substantially the same materials as he submits to support his motion for specific performance in these criminal cases. On January 5, 2005, the court denied that motion with the following explanation:

In their oral discussions in the defendant's presence immediately before the defendant entered his guilty pleas, the prosecutor and the defendant's counsel apparently agreed that the defendant's payment of $20,000 restitution plus $5,000 prosecution costs would satisfy those obligations for the 273 counts that had not yet been tried – but would not affect any obligations related to the 50 counts that were tried earlier. The defendant himself apparently had the same understanding.

\*\*\*

[T]he plea agreement clearly had no effect on Gary DeMastry's obligations for any conduct that the state asserted in the first 50 counts, including but not limited to the obligations that the court imposed in the sentence for the 32 convictions on those counts. Finally, the plea agreement had no effect on the county's fraudulent conveyance claim which arose on January 5, 2001, almost two years after the special audit report. If a fraudulent transfer occurred, it was a separate, subsequent act for which any resulting claim does not arise from the special audit, or any of the criminal charges.

Exhibit P to Return of Writ.

The Ohio Court of Appeals affirmed the trial court's decision as follows:

Appellant Gary K. DeMastry appeals from the denial of his Motion for Specific Performance of the Plea in the Fairfield County Court of Common Pleas. The plaintiff-appellee is the State of Ohio.

58

1. *STATEMENT OF THE FACTS AND CASE*

Appellant is the former Sheriff of Fairfield County, Ohio. In January 2000, appellant was indicted on over 300 counts related to his service as an elected official, including theft in office, money laundering, and tampering with evidence. Additional charges were filed in May 2000 and December 2000.

Three hundred twenty-three counts were ultimately consolidated under one case number. Appellant pled not guilty to all charges. However, prior to the start of the trial in March 2001, the trial court severed 273 of the 323 counts, deferring them until a later time. The remaining 50 counts were presented to the jury. On December 11, 2001, the jury returned a verdict of guilty on 32 counts and not guilty on one count. It was a hung jury on the remaining 17 counts.

On January 18, 2002, the trial court filed a judgment of sentence. In regard to the felonies, appellant was sentenced as follows. Appellant was sentenced to six years in prison on one count of engaging in a pattern of corrupt activity. Appellant was sentenced to five years in prison on one count of conspiracy to engage in a pattern of corrupt activity. Appellant was sentenced to four years in prison on each of 22 counts of evidence tampering or complicity in evidence tampering. Appellant was sentenced to 12 months in prison on each of four counts of theft in office or complicity to commit theft in office (some of which pre-S.B. 2). Finally, appellant was sentenced to nine months in prison for obstructing justice.

In regard to the misdemeanor convictions, appellant received the following sentences. On two counts of soliciting or receiving improper compensation, appellant was sentenced to six months of incarceration on each count. On one count of filing a false financial-disclosure statement, appellant was given a six-month sentence.

All of the aforesaid felony and misdemeanor sentences were ordered to be served concurrently.

On February 15, 2002, appellant filed a notice of appeal. Upon consideration, this court affirmed the conviction. *State v. DeMastry,*

155 Ohio App.3d 110, 799 N.E.2d 229.

After appellant's sentencing, the State and appellant began preparations for a trial on the next 50 counts which were not part of the first trial and any counts the State chose to go forward with which had resulted in a hung verdict in the first trial. Due to publicity from the verdict in the first case, the venue was changed to Portage County. Once the charges to be tried were chosen, the matter was set for trial.

On the first day of the scheduled trial, after jury selection had begun, the parties informed the trial court that an agreement had been reached. A written guilty plea form was filed on October 23, 2002. The written plea form set forth the counts to which appellant was pleading guilty and indicated that the negotiations for the plea were stated on the record. A judgment Entry of Sentence was filed on October 31, 2002.

On December 10, 2004, appellant filed a Motion for Specific Performance of the Plea. In the motion, appellant made it clear that he was not asking the trial court to permit him to withdraw his pleas. The motion was directed solely at specific performance. Specifically, appellant sought an order from the trial court that the State must live up to its end of the plea bargain by not pursuing the civil claims against appellant.

Specifically, appellant contended that the State had violated the terms of the plea when the Attorney General for the State of Ohio filed a civil complaint on behalf of Fairfield County which asserted a claim against appellant and a number of other defendants. Subsequently, the complaint was amended to add claims, including a civil RICO claim, against several defendants, including appellant. Appellant asserted that the claims were estopped as to appellant because the plea agreement in the criminal case resolved all financial claims against appellant.

On January 28, 2005, the trial court denied appellant's Motion for Specific Performance. In so doing, the trial court held as follows:

"⋯ In substance, [the] cases [cited by appellant] hold that a trial court has discretion to accept and enforce a plea agreement which governs the disposition of pending criminal charges.

"[None] of those cases ⋯ holds that the court presiding over a criminal

60

case should-

"(a) enforce plea bargain terms by requiring or precluding performance which is not part of the sentencing judgment for that criminal case; or

"(b) enforce plea bargain terms more than two years after the sentence judgment; or

"(c) enforce plea bargain terms by requiring the state to pursue or abort civil remedies outside that criminal case, whether they are in the same court or a different court.

"This Court independently attempted to research those matters and found no case to support the defendant's claim that the court has authority to impose that remedy in these circumstances.

"Fairfield County was not a party to these criminal cases. Without determining whether this Court could or should have accepted a plea bargain which restricted that non-party's ability to pursue related civil remedies, the Court now concludes that the sentencing judgment was the ultimate disposition of those criminal charges.

"To the extent that the trial court record contains any plea agreement that the sentencing judgment failed to enforce, the defendant should have raised that complaint by direct appeal. His failure to assert that complaint on a direct appeal bars it now as a matter of *res judicata. State v. Szefcyk* (1996), 77 Ohio St.3d 93, 1996-Ohio-337, 671 N.E.2d 233; *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104. To the extent that he required proof outside the trial court record to show that the sentencing judgment failed to enforce any plea agreement, the defendant should have asserted that claim in a timely petition for post-conviction relief within 180 days after the time for his direct appeal expired. *See* R.C. 2323.21(A)(2). His failure to seek that relief then precludes its consideration now. *State v. Halliwell* (1999), 134 Ohio App.3d 730, 732 N.E.2d 405; *State v. Beaver* (1998), 131 Ohio App.3d 458, 722 N.E.2d 1046.

It is from the January 28, 2005, Judgment Entry that appellant appeals, raising the following assignment of error:

"APPELLANT'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY

AND INTELLIGENTLY MADE AND HE WAS DEPRIVED OF DUE PROCESS OF LAW WHEN THE STATE AGREED NOT TO SEEK ANY FURTHER CRIMINAL OR CIVIL PENALTIES IF HE PLED GUILTY TO SEVERAL COUNTS PRIOR TO HIS SECOND TRIAL BUT THE STATE FAILED TO LIVE UP TO ITS END OF THE BARGAIN WHEN IT FILED A CIVIL SUIT AGAINST APPELLANT AND THE TRIAL COURT ERRED IN REFUSING TO ORDER SPECIFIC PERFORMANCE OF THE PLEA AGREEMENT AGAINST THE STATE."

In the sole assignment of error, appellant contends that the trial court erred when it denied appellant's motion for specific performance of a plea agreement. We disagree.[FN1]

FN1. We note that the State has not filed an appellee's brief in this case.

We begin our analysis with a general statement of the law concerning breach of plea agreements. "A plea bargain itself is contractual in nature and subject to contract-law standards." *Baker v. United States* (C.A.6, 1986), 781 F.2d 85, 60, cert. denied, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719. Whether there has been a breach of a valid plea agreement rests within the sound discretion of the trial court. *State v. Mathews* (1982), 8 Ohio App.3d 145, 146, 456 N.E.2d 539. When a plea bargain has been breached, the trial court has two possible remedies to choose from, at its discretion and depending upon the circumstances of the particular case. *State v. Mathews, supra.* (citing *Santobello v. New York* (1971), 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427). These two remedies are specific performance of the agreement and the withdrawal of the plea.

In this case, appellant seeks an order of specific performance by which the State of Ohio and/or Fairfield County [FN2] would be ordered to dismiss a civil suit filed against appellant. However, we find that the trial court which presided over the criminal action does not have jurisdiction to order that an action be taken in a separate civil case. Appellant does not argue that the State failed to honor the plea agreement to the extent it addresses sentencing in this criminal case. Instead, appellant seeks an order which affects the civil suit filed by the State Attorney General's Office. We agree with the trial court that it is up to the court in that civil case to decide if the plea agreement in the criminal case works as a defense in that civil case. [FN3]

FN2. In his brief, appellant is not consistent as to whom he seeks an order against.

FN3. Thus, even if there were a breach of the plea agreement as alleged by appellant, the trial court's jurisdiction is limited to the criminal action and does not extend to the separate, civil action.

 Further, the civil suit was brought by the Ohio Attorney General's Office on behalf of Fairfield County. Fairfield County was not a "party" to the plea agreement. The criminal charges were brought by the State of Ohio, not Fairfield County. As such, the trial court has no jurisdiction arising from the criminal case to order Fairfield County to act. *See State v. Cole,* Richland App. No.2004-A-108, 2005-Ohio-3048.[FN4]

FN4. This Court has previously held that even when an agency of the State is bound by a plea agreement, the criminal trial court that presided over the criminal matter has no authority over that agency unless that agency was a party to the criminal case. *State v. Cole,* Richland App. No.2004-CA-108, 2005-Ohio-3048. In *Cole,* this Court found that the State Parole Board was bound by a criminal plea agreement but held that because the Parole Board was not a party to the criminal proceeding, the trial court had no authority over the Parole Board. In that case, this court held that the proper remedy was a civil declaratory judgment action and injunctive relief against the Parole Board or a writ of mandamus. *Id.* at para. 15-16.

Last, we find that even if the trial court had jurisdiction and authority to order the Attorney General's Office and/or Fairfield County to dismiss an action in a separate, civil action, it was not an abuse of discretion to fail to do so in this case. Appellant seeks an order that all civil claims against him be dismissed. However, the plea agreement in question did not concern all charges against appellant. Appellant had been charged with other counts which were not subject to the plea agreement. Even if appellant is correct that the State agreed not to bring a civil suit on the counts involved with the plea agreement, the State was free to pursue a civil suit against appellant in regard to the other counts or any basis other than the charges involved in the plea agreement. For the foregoing reasons, we find the trial court did not abuse its discretion by denying appellant's motion for specific performance.

Accordingly, appellant's sole assignment of error is overruled.

The judgment of the Fairfield Court of Common Pleas is affirmed.

Exhibit U to Return of Writ.  Again, the decision of the state appellate court is presumed to be correct. 28 U.S.C. §2254(d); *Williams v. Taylor, supra*.  Petitioner has failed to rebut the factual findings of the state courts indicating that the terms of his plea agreement did not include any of the fifty charges that were a part of his jury trial or the fraudulent conveyance claim that apparently took place approximately two years after the special audit report.  *See* Exhibit P to Return of Writ; 28 U.S.C. §2254(e)(1).

Petitioner's written guilty plea contained no reference to a cap on restitution or prosecution costs, but indicated that the terms of the plea agreement were "stated on the record."  *See id.*  The transcript of petitioner's guilty plea supports a finding that his plea agreement did not include the jury trial charges or any restitution arising as a result of later charges of fraudulent conveyance:

> MR. SCHENCK: You Honor, the State is of the understanding that we have made an offer and the defendant is accepting that offer....
>
> In further consideration of this plea.... the defendant agrees to pay $20,000 in restitution which would reflect the public funds that were misappropriated in these 50 counts...
>
> MR. SUMMERS: We're capping restitution at 20,000 for the whole case, for this case on 029,303 –
>
> MR. SCHENCK: That is correct.
>
> ***

64

MR. WOLAVER: Let me go back a little. $20,000 restitution represents the monies misappropriated in the 50 counts we're addressing in this trial.

Further, the cost of prosecution related to this particular case, the one scheduled to begin on October 15th ... we have agreed that the maximum would be $5,000.

Further agreed that these amounts would be paid in 30 days after the plea, which time all of the remaining counts ... be dismissed and I guess for the record this would not affect any of the dispositions, the right to appeal, or any of the other matters currently in issue regarding the first trial which this Court presided over in Case Number 029 and 121, I believe, which the Court previously heard in November and December of last year.  122, I'm sorry.

***

COURT: All right, call upon Mr. Summers if he has any statement he wishes to make.

MR. SUMMERS: I do.... I'll start off with the opposition if this plea does not contain a cap on all restitution of $20,000, we don't have a plea.   It was my understanding, my clear understanding, that restitution, finality and getting on with your life is probably the foremost reason my client is entering a plea of guilty.... $20,000 is no short amount but to leave 282 counts hanging out there which any number of civil agencies or governmental bodies can seek restitution is not finite, my client will not accept it.

... [T]hat in fact the expenses are capped at $5,000 of this prosecution. Third of all, that there will be prosecution for no other counts but I might add to you, Judge, to show it is $20,000 for the whole kit and kaboodle, if you will – I don't know how to say that in Latin – Mr. Schenck did say to me he will dismiss the rest of the counts and everything else is over when you pay the $20,000 and he may have also said when you pay that portion up to $5,000 expenses....

***

MR. SUMMERS: What I'm saying is absolutely upon the payment of 20 plus thousand dollars, not to exceed 25, the remaining counts, 45 in this case and all the remaining counts of the 100 and/or 200 and roughly 232 counts shall be dismissed....

***

COURT: Let me make sure.  My understanding [of] what both of you have said is that nothing we're doing here has any relevance to the cases that were tried in November and December of 2001 and are the subject of a judgment entry on January 18th 2002, neither enhances or detracts from anything that occurred there or any rights either side may have relating to those counts and that judgment.  Is that the State's understanding?

MR. SCHENCK: That is the State's understanding.

COURT: Is that the defendant's?

MR. SUMMERS: Yes, your Honor.

MR. SCHENCK: That means - to put it very clearly - whatever dollar amounts - I don't know what they are - determined forfeited or costs or whatever –

COURT: They are not part of this discussion.

MR. SUMMERS: I agree with that, what I'm saying to you is this payment of the 20,000 in prospective fashion sets a dollar value on the restitution of [illegible] to 232.

MR. SCHENCK: No question.  The first 50 being the first.

*Transcript,* at 4-14, Exhibit O to Return of Writ.  Thus, the parties agreed at the time of petitioner's

guilty plea that the $20,000 limit on restitution did not include the jury trial charges.  In view of the foregoing, the affidavit of defense counsel indicating to the contrary is not credible.  Petitioner has failed to establish that the prosecutor breached the terms of his guilty plea by filing civil charges against him.

Claim nine is without merit.

## XI.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting

the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge